CARL J. D. BAUMAN AND MARGARET A. BAUMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bauman v. Commissioner
Docket No. 37669-85.
United States Tax Court
T.C. Memo 1988-122; 1988 Tax Ct. Memo LEXIS 150; 55 T.C.M. (CCH) 435; T.C.M. (RIA) 88122; March 21, 1988. Carl J. D. and Margaret A. Bauman, pro se. Linda J. Wise, for the respondent. COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was considered pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rule 180 et seq. [1]
Respondent determined deficiencies in petitioners' Federal income taxes as follows: *151 Additions to Tax
Year
Deficiency
Section 6651
Section 6653(a)
1979
$ 12,476.00
--
$ 624.00
1980
$ 19,023.00
--
$ 951.00
1981
$ 13,573.00
$ 4,072.00
* $ 679.00
Before the Court is a motion for partial summary judgment by respondent, under Rule 121, with respect to whether petitioners are entitled, for the years 1980 and 1981, to their distributable share of losses reported by Energy Resources, Ltd., a limited partnership in which Carl J. D. Bauman (petitioner) was a limited partner, to the extent such losses are attributable to a minimum annual royalty paid or accrued by Energy Resources, Ltd., (ERL) during said years. Petitioners were residents of Anchorage, Alaska, at the time they filed their petition. On December 1, 1980, ERL entered into a sublease (lease) to mine and market, as sublessee, all of the mineable and merchantable coal *152 underlying some 3,900 acres of land in Harlan County, Kentucky. In addition, ERL leased certain coal mining equipment from the same lessor. The lease was for a primary term of 30 years, unless in the sole judgment of ERL the economically recoverable coal was exhausted sooner, in which event the lease was terminable. The lease could be extended beyond 30 years, on a year-by-year basis, at ERL's election, until such time as all merchantable coal had been exhausted from the properties. Under the lease, ERL was obligated to pay its lessor a production royalty of eight percent (8%) of the gross sales price, f.o.b. rail car, per 2,000 pounds of coal mined and sold from the leased properties. A separate consideration, not material for our purposes here, was agreed to for the leased mining equipment. Irrespective of production, ERL was obligated to pay to its lessor advanced royalties, annually, subject to credits from production. These advanced royalty obligations were in the amount of ten million dollars ($ 10,000,000) each year, beginning on the date of execution of the lease, and thereafter on each annual anniversary date, for the life of the lease, or 20 years, whichever was less. *153 This annual obligation was discharged as follows: For the first payment due December 1, 1980, $ 750,000 cash and a recourse (personal liability) note of $ 9,250,000; for the payment due December 1, 1981, $ 250,000 cash and a recourse (personal liability) note of $ 9,750,000; for the December 1, 1982, payment, a recourse (personal liability) note of $ 10,000,000; and for the fourth and all remaining anniversary payments, a nonrecourse note of $ 10,000,000 each year. [2]
All of the notes were payable 20 years after date, subject to prior payments; however, each note could be extended, at the option of either the payee or the maker, for an additional 10 years. In the lease, ERL "guaranteed" that the annual cash payments to its lessor, including the cash payment made on the first two annual advanced royalties, cash resulting from production, and any cash prepayments of principal on the notes, would equal or exceed what was referred to in the lease as a "minimum cash payment *154 schedule," in the following amounts, per year: $ 1,000,000 on or before the 1981 anniversary date, $ 800,000 on or before the 1982 anniversary date, $ 800,000 on or before the 1983 anniversary date, $ 600,000 on or before the 1984 anniversary date, $ 700,000 on or before the 1985 anniversary date, $ 800,000 on or before the 1986 anniversary date, $ 900,000 on or before the 1987 anniversary date, $ 1,000,000 on or before the 1988 anniversary date, $ l,000,000 on or before the 1989 anniversary date, $ 1,000,000 on or before the 1990 anniversary date.
The notes bore interest at six percent (6%) per annum. [3] All of the notes were secured by the coal reserves underlying the leased properties. As a condition of his admission as a limited partner in ERL, petitioner was required, *155 as part of his capital contribution, (as were all limited partners) to assume personal liability for his ratable share of the three recourse notes of $ 9,250,000, $ 9,750,000 and $ 10,000,000 executed by ERL to its lessor under the lease for the first three advanced royalties. On its partnership information return for 1980 and 1981, ERL deducted $ 10,000,000 each year as advanced minimum royalties for such years. Respondent disallowed the deductions, contending that the amounts claimed did not constitute deductible advanced royalties within the minimum royalty provision of section 1.612-3(b)(3), Income Tax Regs.[4]
Under Rule 121, summary judgment may be granted "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). *156 Partial summary judgment may also be granted. Rule 121(b). The moving party bears the burden of proving there is no genuine issue of material fact. Jacklin v. Commissioner,79 T.C. 340, 344 (1982); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). The party opposing a properly supported motion cannot rest upon the mere allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). The standard for granting a motion for summary judgment requires that there be no genuine issue of material fact. A material fact is one that is both relevant to an element of a claim or defense and that might affect the outcome of a lawsuit. The substantive law governing a claim or defense determines the materiality of a fact. Entry of summary judgment is not precluded by disputes over irrelevant or immaterial facts. Anderson v. Liberty Lobby, Inc.,477 U.S. 242, 106 S.Ct. 2505, 2510 (1986); T.W. Elec. Service v. Pacific Elec. Contractors,809 F.2d 626, 630 (9th Cir. 1987). In determining if a genuine issue of material fact exists, all facts and inferences *157 must be viewed in the light most favorable to the party opposing the motion. Anderson v. Liberty Lobby, Inc., 106 S. Ct. at 2513; Jacklin v. Commissioner, supra at 344; Espinoza v. Commissioner, supra at 416. A genuine dispute over a material fact precluding the grant of summary judgment exists "if the evidence is such that a * * * [judge or] jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., supra at 2510. Summary judgment may be granted if the nonmoving party's evidence is "merely colorable * * * or is not significantly probative." Anderson v. Liberty Lobby, Inc., supra at 2511 (citations omitted). Section 1.612-3(b)(3), Income Tax Regs., sets forth the rules for deductibility of advance royalties. Generally, an advance royalty is deductible only in the year the mineral product, for which the royalty is paid, is sold. Section 1.612-3(b)(3), Income Tax Regs. When the advance royalty is paid or accrued "as a result of a minimum royalty provision," an exception to the general rule is provided by the regulation and the advance royalty may be deducted in the *158 year the royalty is paid or accrued even though no mineral product has been sold. Section 1.612-3(b)(3), Income Tax Regs.
For purposes of the regulation, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. * * *
Section 1.612-3(b)(3), Income Tax Regs. The regulation is valid. Redhouse v. Commissioner, 728, F.2d 1249 (9th Cir. 1984), affd. 79 T.C. 355 (1982), cert. denied 469 U.S. 1034 (1984); Wing v. Commissioner,81 T.C. 17 (1983). To the extent, therefore, that no coal was sold during the year in question, the royalty for such year is deductible only if the royalty was paid pursuant to a minimum royalty provision within the meaning of section 1.612-3(b)(3), Income Tax Regs.[5]
*159 A valid minimum royalty provision must contain a requirement that a substantially uniform amount of royalties be paid at least annually over the term of the lease, or for a period of at least 20 years, to satisfy the regulation. Capek v. Commissioner,86 T.C. 14, 41 (1986); Vastola v. Commissioner,84 T.C. 969 (1985); Wing v. Commissioner, supra. A minimum royalty provision does not satisfy the regulation if the provision permits the deferral of royalty payments. There must be an enforceable obligation to make a royalty payment each year. Oneal v. Commissioner,84 T.C. 1235, 1241 (1985); Vastola v. Commissioner, supra at 975-976; Wing v. Commissioner, supra at 38 n.30. This Court has previously determined in several cases that constitutes a "minimum royalty provision" under section 1.612-3(b)(3), Income Tax Regs. See, e.g., Capek v. Commissioner, supra;Wing v. Commissioner, supra. In Capek, it was held that, in order to qualify as a minimum royalty under section 1.612-3(b)(3), Income Tax Regs., the lease must require the payment of a substantially *160 uniform amount of royalties at least annually. 86 T.C. at 41. In other words, the lease cannot permit the deferral of payment of the minimum annual royalty or relegate its payment to production. There must be an enforceable obligation to make a substantially uniform payment each year. Oneal v. Commissioner, supra at 41. The fact that the value of the property securing payment of the royalty obligation is sufficient to assure the ultimate payment of the obligation is irrelevant under section 1.612-3(b)(3), Income Tax Regs.Capek v. Commissioner, supra;Vastola v. Commissioner, supra;Wing v. Commissioner, supra.
In light of these pronouncements, two considerations stand out in the evaluation of respondent's motion: Were the advanced royalty obligations by ERL "substantially uniform" and, if so, were such obligations "paid at least annually?" Three of the notes (including the notes for the years in question) were full recourse obligations, while the remaining notes were nonrecourse obligations. While this difference, standing alone, might not be sufficient to conclude that the advanced royalty obligations were not "substantially *161 uniform," [6] this Court held in Wing v. Commissioner, supra at 41, that, where a lease allows payment of an advanced royalty which may include nonrecourse notes, the obligation is not an advanced minimum royalty, unless there is required annual payments in a substantially uniform amount. Additionally, this Court held in Wing that, in determining substantial uniformity, the terms of the entire agreement must be considered. Furthermore, when an advanced royalty includes a nonrecourse note, the payment of which is contingent on mineral production from the property which is the subject of the lease, the nonrecourse note will not constitute a deductible advanced royalty payment. Vastola v. Commissioner, supra;Maddrix v. Commissioner,83 T.C. 613 (1984), affd. 780 F.2d 946 (11th Cir. 1986). *162 The cash payments during the term of the lease in this case differed: Cash was required only for the first two years, which differed in amount each year, and no cash was required thereafter. None of the notes required payment other than from production. The Court notes, however, that, in the lease, ERL guaranteed that, for ten years, the cash payments to the lessee would equal or exceed certain levels each year. We do not construe this guaranty as an enforceable obligation or an enforceable payment requirement on the royalty notes for the reason that, while default in making these payments may have constituted a default of the lease, each note, except the nonrecourse notes, contained this provision: "It is expressly understood that the termination of the Lease Agreement for any reason or a default by the maker thereunder shall not create a right on the part of the Payee to accelerate this note." It is evident, therefore, that a failure by ERL to meet the payment levels guaranteed in the lease would not have constituted a default of the three full recourse notes. Moreover, the guarantee by ERL was only for 10 years. From the above, the Court finds and concludes that the advanced *163 royalty obligations of ERL were not "substantially uniform" and were not "paid at least annually." In effect, payment of the notes was contingent and deferred to the production and sale of coal. Thus, in the absence of production, there was no requirement for an "annual" payment. [7] The regulations in question and the judicial interpretations thereof require that payments must not be contingent, but rather must be independent of sales of the mineral involved and, moreover, such payments must be made annually. *164 Therefore, with respect to the losses claimed by petitioners on their 1980 and 1981 returns from ERL, such losses are not allowed to the extent such losses are attributable to advanced mineral royalty obligations of ERL under section 1.612-3(b)(3), Income Tax Regs. We find no genuine issue of material fact on this question. Respondent's motion for partial summary judgment is granted. To the extent coal was mined and sold during 1980 and 1981, and to the extent other expenses were incurred, petitioners may be entitled to their ratable share of the partnership's allowable deduction of royalties attributable to minerals (coal) actually sold and to other expenses incurred by the partnership. This opinion does not address that question as the same will be determined on trial of this case on its merits. Nor does this opinion address petitioners' 1979 tax year, which was adjusted in the notice of deficiency and does not involve ERL. This opinion is limited to the question whether the royalty obligation at issue qualified under a minimum royalty provision as envisioned by section 1.612-3(b)(3), Income Tax Regs., for the years 1980 and 1981, and, to that extent, it is the Court's finding *165 and ruling that such obligation does not qualify. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice of Procedure. ↩
*. This addition is pursuant to section 6653(a)(1). Additionally, for 1981, respondent determined an addition to tax under section 6653(a)(2) in the amount of 50% of the interest due on that portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. ↩
2. For purposes of the motion for partial summary judgment, respondent agrees that, for the years in question, the cash was paid and the notes for the first three years were in fact recourse obligations. ↩
3. The dates when interest began accruing differed on each note. For the December 1, 1980, note, interest accrued when 500,000 tons of coal were mined and sold during any single year; for the 1981 note, the interest commenced when 750,000 tons were mined in any single year; for the 1982 note, when 1,000,000 tons were mined, and for the fourth and subsequent notes, interest commenced from "maturity." ↩
4. On their 1980 and 19981 income tax returns, petitioners claimed $ 33,154 and $ 41,682, respectively, as their distributive share of the total loss reported by ERL for said years. Respondent disallowed the entire losses claimed by petitioners. ↩
5. For 1980 and 1981, ERL reported, respectively, gross sales of $ 267,071 and $ 5,164,506, which the Court assumes, for purposes of the motion, included sales of coal. The effect which such sales may have had on petitioners' entitlement to deductions for 1980 and 1981 is addressed in the latter part of this opinion. This opinion addresses solely the question whether the advanced royalty in each year qualified as a deductible advance minimum royalty under section 1.612-3(b)(3), Income Tax Regs.↩, to the extent such royalty exceeded the amount of coal sold. 6. See Poster v. Commissioner,T.C. Memo. 1988-57↩, filed February 18, 1988, where the first two advanced royalty notes were recourse,and the six succeeding notes were nonrecourse. Under the facts of that case, the Court held the advanced royalties were not deductible pursuant to a minimum royalty provision, even for the year in which a recourse note was executed. .
7. We note that, since the notes for the years in question were "recourse" and, therefore, petitioner was personally liable for ERL's obligation on the note, this Court, in Heitzman v. Commissioner,T.C. Memo. 1987-109, rejected the argument that assumption of a person liability or execution of a recourse note, payable after the end of the year in question, complied with the requirements of section 1.612-3(b)(3), Income Tax Regs.: In reaching our conclusion we have considered but cannot adopt petitioners' argument that since the Stonehurst partners were personally liable for the minimum royalties, the sublease in effect provided for guaranteed minimum royalties and thus satisfied the regulation. In support of this contention, petitioners point to Vastola, where we make a strong argument that the regulation should be interpreted to include a provision requiring the payment of royalties with the execution of recourse promissory notes. 84 T.C. at 979. However, any weight attributable to this dictum was removed by our subsequent decision in Capek, where the provision at issue permitted the payment of the minimum royalty with a recourse note payable after the end of the taxable year. Applying the same principles discussed above, we concluded that "Even assuming that petitioners would eventually pay the notes, payment after the close of the taxable year does not satisfy the requirement of the regulation that the royalties be paid at least annually over the term of the lease." 86 T.C. at 47. [53 T.C.M. 241↩, 245, 56 P-H Memo T.C. par. 87,109 at 87-566.]