PAUL S. WALDEN and MARIE C. WALDEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walden v. Commissioner
Docket No. 46097-86.
United States Tax Court
T.C. Memo 1988-98; 1988 Tax Ct. Memo LEXIS 130; 55 T.C.M. (CCH) 332; T.C.M. (RIA) 88098; March 7, 1988. John H. Birkeland, for the petitioners. Linda J. Wise, for the respondent. COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was considered pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rule 180 et seq. [1]
Respondent determined a deficiency of $ 45,917 in petitioners' Federal income tax *131 for the year 1980. Respondent has before the Court a motion for partial summary judgment under Rule 121 with respect to whether petitioners are entitled to deductions attributable to a minimum annual royalty by a partnership, Virginia Partners, Ltd. (VPL) in which petitioners had an interest. [2]
Petitioners were residents of Wheatridge, Colorado, at the time they filed their petition. VPL was organized as a limited partnership on December 4, 1978. Paul S. Walden (petitioner) was a limited partner in VPL. [3] Pursuant to a contract which had been entered into earlier, VPL, on April 20, 1979, entered into a sublease (lease) to mine and market, as sublessee, all of the mineable and merchantable coal underlying some 8,000 acres of land in Lee County, Virginia, and Harlan County, Kentucky. In addition, VPL purchased from the sublessors two corporations, the assets of which included coal mining equipment. The lease was for a primary term of 20 years, unless in the sole judgment of VPL the economically recoverable coal was exhausted sooner, in which event the lease was terminable. The *132 lease could be extended beyond 20 years, on a year-to-year basis, at VPL's election, until such time as all merchantable coal had been extracted from the properties; however, such extensions could not go beyond the primary terms of the underlying leases affecting the coal property, which terms were 40 years with renewal terms of 40 years. Under the lease, VPL was obligated to pay its lessors a production royalty of four percent (4%) of the gross sales price, f.o.b. mine, per 2,000 pounds of coal mined and sold from the coal properties. VPL was also obligated to pay additional production royalties due on the underlying leases of 75 cents ($ .75) per 2,000 pounds of coal mined and sold from the leased premises. [4] Irrespective of production, VPL was obligated to pay advanced royalties, annually, subject to credits from production. These advanced royalty obligations were payable in cash and promissory notes as follows: For the first *133 year (1979), cash of $ 240,000 and a recourse (personal liability) note of $ 8,100,200; for the second year (1980), cash of $ 120,000 payable at the rate of $ 10,000 per month during the year 1979, and a recourse (personal liability) note of $ 8,220,200 to be executed by VPL on or before the 1980 anniversary date of the lease; for the third year (1981), $ 120,000 cash, payable $ 10,000 per month beginning one month after the first annual anniversary date of the lease, and a nonrecourse note of $ 8,220,200; and for all subsequent years, a nonrecourse note of $ 8,340,200 to be executed before each annual anniversary date of the lease. [5]
All of the notes were payable 20 years after date, subject to prior production payments; however, each note could be extended, at the option of either the payee or the maker, for an additional 10 years. Other than the payments due from production, no other cash payments were required *134 on the notes prior to maturity. Each note provided that no principal payments were due until all earlier executed notes had been paid in full. The notes bore interest at six percent (6%) per annum, from maturity. All of the notes were secured by the coal reserves underlying the leased properties. As a condition of his admission as a limited partner in VPL, petitioner was required, as part of his capital contribution, (as were all limited partners) to assume personal liability for his ratable share of the two recourse notes of $ 8,100,200 and $ 8,220,200 executed by VPL, to its lessors under the lease for the first two advanced royalties. On its partnership information return for 1980, VPL deducted $ 8,340,200 as advanced minimum royalties for that year. Respondent disallowed the deduction, contending that the amount claimed did not constitute a deductible advanced royalty within the minimum royalty provision of section 1.612-3(b)(3), Income Tax Regs.[6]
Under Rule *135 121, summary judgment may be granted "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Partial summary judgment may also be granted. Rule 121(b). The moving party bears the burden of proving there is no genuine issue of material fact. Jacklin v. Commissioner,79 T.C. 340, 344 (1982); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). The party opposing a properly supported motion cannot rest upon the mere allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). The standard for granting a motion for summary judgment requires that there be no genuine issue of material fact. A material fact is one that is both relevant to an element of a claim or defense and that might affect the outcome of a lawsuit. The substantive law governing a claim or defense determines the materiality of a fact. Entry of summary judgment is not precluded by disputes *136 over irrelevant or immaterial facts. Anderson v. Liberty Lobby, Inc.,477 U.S. 242, 106 S.Ct. 2505, 2510 (1986); T.W. Elec. Service v. Pacific Elec. Contractors,809 F.2d 626, 630 (9th Cir. 1987). In determining if a genuine issue of material fact exists, all facts and inferences must be viewed in the light most favorable to the party opposing the motion. Anderson v. Liberty Lobby, Inc.,106 S.Ct. at 2513; Jacklin v. Commissioner, supra, at 344; Espinoza v. Commissioner, supra at 416. A genuine dispute over a material fact precluding the grant of summary judgment exists "if the evidence is such that a * * * [judge or] jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., supra at 2510. Summary judgment may be granted if the nonmoving party's evidence is "merely colorable * * * or is not significantly probative." Anderson v. Liberty Lobby, Inc., supra at 2511 (citations omitted). Section 1.612-3(b)(3), Income Tax Regs., sets forth the rules for deductibility of advance royalties. Generally, an advance royalty is deductible only *137 in the year the mineral product, for which the royalty is paid, is sold. Section 1.612-3(b)(3), Income Tax Regs. When the advance royalty is paid or accrued "as a result of a minimum royalty provision," an exception to the general rule is provided by the regulation and the advance royalty may be deducted in the year the royalty is paid or accrued even though no mineral product has been sold. Section 1.612-3(b)(3), Income Tax Regs.
For purposes of the regulation, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. * * *
Section 1.612-3(b)(3), Income Tax Regs. The regulation is valid. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984), affg. 79 T.C. 355 (1982), cert. denied 469 U.S. 1034 (1984); Wing v. Commissioner,81 T.C. 17 (1983). To the extent, therefore, that no coal was sold during the year in question, the royalty for such year is deductible only if the royalty was paid *138 pursuant to a minimum royalty provision within the meaning of section 1.612-3(b)(3), Income Tax Regs.[7]
A valid minimum royalty provision must contain a requirement that a substantially uniform amount of royalties be paid at least annually over the term of the lease, or for a period of at least 20 years, to satisfy the regulation. Capek v. Commissioner,86 T.C. 14, 41 (1986); Vastola v. Commissioner,84 T.C. 969 (1985); Wing v. Commissioner, supra. A minimum royalty provision does not satisfy the regulation if the provision permits the deferral of royalty payments. There must be an enforceable obligation to make a royalty payment *139 each year. Oneal v. Commissioner,84 T.C. 1235, 1241 (1985); Vastola v. Commissioner, supra at 975-976; Wing v. Commissioner, supra at 38 n.30. This Court has previously determined in several cases what constitutes a "minimum royalty provision" under section 1.612-3(b)(3), Income Tax Regs. See, e.g., Capek v. Commissioner, supra;Wing v. Commissioner, supra. In Capek, it was held that in order to qualify as a minimum royalty under section 1.612-3(b)(3), Income Tax Regs., the lease must require the payment of a substantially uniform amount of royalties at least annually. 86 T.C. at 41. In other words, the lease cannot permit the deferral of payment of the minimum annual royalty or relegate its payment to production. There must be an enforceable obligation to make a substantially uniform payment each year. Oneal v. Commissioner, supra at 41. The fact that the value of the property securing payment of the royalty obligation is sufficient to assure the ultimate payment of the obligation is irrelevant under section 1.612-3(b)(3), Income Tax Regs.Capek v. Commissioner, supra; *140 Vastola v. Commissioner, supra;Wing v. Commissioner, supra.
In light of these pronouncements, two considerations stand out in the evaluation of respondent's motion: Were the advanced royalty obligations by VPL "substantially uniform" and, if so, were such obligations "paid at least annually?" Two of the notes (including the note for the year in question) were full recourse obligations, while the remaining notes were nonrecourse obligations. While this difference, standing alone, might not be sufficient to conclude that the advanced royalty obligations were not "substantially uniform," [8] this Court held in Wing v. Commissioner, supra at 41, that, where a lease allows payment of an advanced royalty which may include nonrecourse notes, the obligation is not an advanced minimum royalty, unless there is required annual payments in a substantially uniform amount. Additionally, this Court held in Wing that, in determining substantial uniformity, the terms of the entire agreement must be considered. Furthermore, when an advanced royalty includes a nonrecourse note, the payment of which is contingent on mineral production from *141 the property which is the subject of the lease, the nonrecourse note will not constitute a deductible advanced royalty payment. Vastola v. Commissioner, supra;Maddrix v. Commissioner,83 T.C. 613 (1984), affd. 780 F.2d 946 (11th Cir. 1986). The cash payments during the terms of the lease in this case differed: Cash was required only for the first three years and no cash was required thereafter. None of the notes required payments other than from production. Most significantly, for our purposes here, no payments were due on any note (even if there was production) unless all earlier executed notes were paid in full. From the above, the Court finds and concludes that the advanced royalty obligations of VPL were not "substantially uniform" and were not *142 "paid at least annually." In effect, payment of the notes was contingent and deferred to the production and sale of coal. Thus, in the absence of production, there was no retirement for an "annual" payment. [9] The regulations in question and the judicial interpretations thereof require that payments must not be contingent, but rather must be independent of sales of the mineral involved and, moreover, such payments must be made annually. *143 Therefore, with respect to the loss claimed by petitioners on their 180 return from VPL, such loss is not allowed to the extent such loss is attributable to an advanced mineral royalty obligation of VPL under section 1.612-3(b)(3), Income Tax Regs. We find no genuine issue of material fact on this question. Respondent's motion for partial summary judgment is granted. To the extent coal was mined and sold during 1980, petitioners may be entitled to their ratable share of the partnership's allowable deduction of royalties attributable to minerals (coal) actually sold. This opinion does not address that question as the same will be determined on trial of this case on its merits. This opinion is limited to the question whether the royalty obligation at issue qualified under a minimum royalty provision as envisioned by section 1.612-3(b)(3), Income Tax Regs., and, to that extent, it is the Court's finding and ruling that such obligation did not qualify. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The only other adjustment to petitioners' 1980 return has been agreed to by the parties. ↩
3. The date of his admission into VPL is not clear from the record; however, the date is immaterial for our purposes here, since petitioners, in their objection to respondent's motion, admitted petitioner was a partner in VPL for the year at issue. ↩
4. A separate consideration was agreed to for the two corporations purchased by VPL. ↩
5. For purposes of the motion for partial summary judgment, respondent agrees that, for the year in question, the cash was paid and the note for that year was in fact recourse. ↩
6. On their 1980 income tax return, petitioners claimed $ 81,657 as their distributive share of the total loss reported by VPL for 1980. Respondent disallowed the entire $ 81,657 in the notice of deficiency. ↩
7. For 1980, VPL reported gross sales of $ 1,472,655, which the Court assumes, for purposes of the motion, included sale of coal. The effect which such sales may have had on petitioners' entitlement to a deduction for 1980 is addressed in the latter part of this opinion. This opinion addresses solely the question whether the advanced royalty qualified as a deductible advance minimum royalty under section 1.612-3(b)(3), Income Tax Regs.↩, to the extent such royalty exceeded the amount of coal sold. 8. See Poster v. Commissioner,T.C. Memo. 1988-57↩, filed February 18, 1988, where the first two advanced royalty notes were recourse, and the six succeeding notes were nonrecourse. Under the facts of that case, the Court held the advanced royalties were not deductible pursuant to a minimum royalty provision, even for the year in which the recourse note was executed. 9. We note that, since the note for the year in question was "recourse" and, therefore, petitioner was personally liable for VPL's obligation on the note, this Court, in Heitzman v. Commissioner,T.C. Memo. 1987-109, rejected the argument that assumption of a personal liability or execution of a recourse note, payable after the end of the year in question, complied with the requirements of section 1.612-3(b)(3), Income Tax Regs.: In reaching our conclusion we have considered but cannot adopt petitioners' argument that since the Stonehurst partners were personally liable for the minimum royalties, the sublease in effect provided for guaranteed minimum royalties and thus satisfied the regulation. In support of this contention, petitioners point to Vastola, where we noted by way of dictum that an accrual basis taxpayer could make a strong argument that the regulation should be interpreted to include a provision requiring the payment of royalties with the execution of recourse promissory notes. 84 T.C. at 979. However, any weight attributable to this dictum was removed by our subsequent decision in Capek, where the provision at issue permitted the payment of the minimum royalty with a recourse note payable after the end of the taxable year. Applying the same principles discussed above, we concluded that "Even assuming that petitioners would eventually pay the notes, payment after the close of the taxable year does not satisfy the requirement of the regulation that the royalties be paid at least annually over the term of the lease." 86 T.C. at 47. [53 T.C.M. 241↩, 245, 56 P-H Memo T.C. par. 87, 109 at 87-566.]