CHARLES R. BATTE, III and NORMA L. BATTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Batte v. Commissioner
Docket No. 33145-86
United States Tax Court
T.C. Memo 1989-319; 1989 Tax Ct. Memo LEXIS 319; 57 T.C.M. (CCH) 833; T.C.M. (RIA) 89319; June 28, 1989
John A. Townsend, for the petitioners. Sheila R. Dansby, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies and additions to tax against petitioners for the 1976, 1977 and 1978 taxable years. The issue is whether the statute of limitations has expired for the years before us, thereby barring assessment of the deficiencies and additions to tax. This issue *320 was severed from the remaining issues raised in the petition, by agreement of the parties and the Court. Petitioners attempted to terminate their consents to extend time to assess tax by mailing Forms 872-T addressed to the District Director. By mistake they used the Internal Revenue Service Center zip code instead of that of the District Director. The forms were received by the Service Center. The forms so mailed were never received by the District Director. The question is, under these circumstances were the consents effectively terminated by such forms? For the reasons below we find they were not. FINDINGS OF FACT Petitioners, husband and wife, resided in Houston, Texas when they filed their petition in this case. Mr. Batte is a certified public accountant. Mr. and Mrs. Batte filed joint Federal income tax returns for 1976, 1977 and 1978 with the Austin Service Center on April 15, 1977, September 19, 1978, and April 15, 1979, respectively. On those income tax returns petitioners claimed losses from their investment in I*Screen, Ltd., part of the London Options commodities tax shelter. On January 29, 1979, respondent's District Director in Austin mailed a 30-day letter *321 and a statement of income tax examination changes to petitioners. The changes related to petitioners' deduction for losses generated by their investment in I*Screen in 1976. Petitioners submitted a protest to respondent, dated February 19, 1979, in response to the 30-day letter in which they requested their case be considered by the Appeals Office. The protest was properly mailed to the District Director at 300 E. 8th Street, Austin, Texas 78701, the return address on the 30-day letter. On December 20, 1979, petitioners executed a Form 872-A, Special Consent to Extend the Time to Assess Tax for the 1976 taxable year. The form was correctly returned to the Austin District Director who had requested the extension. The Form 872-A was executed on behalf of respondent by Howard S. Burns on January 2, 1980. On that day, the Austin District Director returned an executed copy of the Form 872-A to petitioners. The Form 872-A executed by petitioners provides that any income tax due on petitioners' return for the 1976 taxable year may be assessed on or before the 90th day after (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of *322 Special Consent to Extend the Time to Assess Tax; (b) the Internal Revenue Service mails Form 872-T to the taxpayers; or (c) the Internal Revenue Service mails a notice of deficiency to the taxpayers for said period. The letter returning the executed copy of the Form 872-A specified that the consent to extend could only be terminated under the conditions set out in the Form 872-A. On March 10, 1980, Mr. Batte corresponded by letter with Delker Seibert of Examination Group 1506 regarding his 1976 income tax deductions for I*Screen. The letter was mailed to 9809 Rowlett Road, Houston, Texas 77075. Mr. Batte spoke to Delker Seibert about his case for the 1976 year several times on the telephone, and visited the Houston office in question at least once. Although the protest requested their case be forwarded to the Appeals office for consideration, petitioners' case was placed in suspense after they executed the Form 872-A. This would have been done by respondent pending the outcome of litigation already involving the London Options tax shelter. Petitioners were not notified that their case was placed in suspense. On November 29, 1980, and December 8, 1980, Mr. and Mrs. Batte *323 respectively executed one Form 872-A for the 1977 and 1978 taxable years. The forms were requested by and mailed from one of the Houston offices of the Austin District Director. Likewise, petitioners mailed the Form 872-A to one of the Houston offices of the Austin District Director. On December 11, 1980, James Clarkson, Group Manager, Austin District, post of duty, Houston, Texas executed the Form 872-A on behalf of respondent. On May 25, 1981, and May 26, 1981, Mr. and Mrs. Batte respectively executed a new Form 872-A for the 1977 and 1978 taxable years. Again, the form was requested by one of the Houston offices of the Austin District Director. The form was executed on behalf of respondent by Marcia Muchelroy, Group Manager, Austin District, post of duty, Houston, Texas on May 28, 1981. The Forms 872-A, relating to 1977 and 1978, contained the same conditions for termination as the 1976 form. If the Forms 872-A had not been executed by the parties, the three-year statute of limitations for the taxable years 1976, 1977, and 1978 would have expired on April 15, 1980, September 19, 1981, and April 15, 1982, respectively. On July 17, 1981, petitioners' cases for 1977 and *324 1978 were placed in suspense with the return programs manager in Austin, Texas, pending the outcome of the litigation regarding London Options commodities tax shelter. Mr. Batte knew that each of the three years involved would be held in suspense until a determination of the London Options tax shelter had been made. Prior to August 24, 1981, Houston, Texas was a part of the Austin District of the Internal Revenue Service. Subsequent to that date, the Houston District was created. On September 15, 1981, both the Houston Chronicle and the Houston Post reported the establishment of the Houston District, including the fact that Houston, Harris County, Texas, was included in the new district. Similarly, the Journal of Accountancy, to which Mr. Batte's Certified Public Accounting Firm subscribed, reported the creation of the Houston District. Although Mr. Batte was aware of the creation of the Houston District, none of the articles indicated that cases currently before the Austin District would be transferred to the newly created Houston District. Petitioners' 1977 and 1978 tax returns were transferred to Houston by the Austin returns program manager. The AIMS data sheet, which records *325 all movement of the case file, for each year shows the cases were physically transferred from Austin to Houston on March 1, 1982. Within 10 days, the IRS computer would have been updated to reflect the transfer of the case. The Houston District obtained responsibility for a case only after it was physically transferred. The returns program manager for Houston did not notify any of the taxpayers that their files were being transferred from the Austin District to the Houston District. Petitioners' 1976 tax return was not under the returns program managers' jurisdiction. A computer record of the taxpayers' 1976 return, taken as of the latter part of 1984, shows that petitioners' 1976 case file was transferred from the Austin District to the Houston District as of February 3, 1983. The AIMS update sheet indicates the physical transfer of the case occurred on January 19, 1983. On April 8, 1985, petitioners executed a Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, for the 1976 taxable year. The Form 872-T was mailed certified mail, return receipt requested, to the "District Director, Internal Revenue Service, Chief, Appeals Office, Austin, *326 Texas 73301." The same day, petitioners executed a Form 872-T for the 1977 and 1978 years. It was also sent certified mail, return receipt requested, but was mailed to the "District Director, Internal Revenue Service, Examination Division, Austin, Texas 73301." The Forms 872-T were delivered to the Austin Internal Revenue Service Center, in accordance with the zip code in the address, on April 15, 1985. Mr. Batte's use of the Austin Service Center zip code was in error, although unintentional, as he was aware that the District Director for the Austin District had a different zip code at the time the Forms 872-T were mailed. The delivery was probably made to the Service Center because deliveries are first sorted on the basis of zip codes. It is post office procedure that mail is sorted by zip code and is transmitted to the applicable postal station for delivery. Mail bearing a name, street address and city, but bearing an incorrect zip code should be re-routed by the initial postal station to the correct postal station for delivery, according to post office procedure. With regard to the envelopes related to the return receipts in the record, however, the postal service *327 would probably have delivered the envelopes to the Service Center since the name Internal Revenue Service appears in the address for each envelope and the zip code was the unique zip code for a branch of the Internal Revenue Service. An employee of the Service Center authorized to receive mail addressed to the Service Center executed the return receipt forms for the two envelopes on April 15, 1985. The Service Center employee was not authorized to receive mail addressed to the District Director. The Service Center has an unusually heavy delivery of mail during the individual income tax return filing season, which ends on April 15. There is no record in the files of the Austin Service Center as to whether or not the Forms 872-T were actually received. Mail received in the Service Center is date stamped, and the envelope in which the document is received is attached to the document. Generally when the Service Center receives a Form 872-T, the receiving employee forwards the Form 872-T to the Windfall Profit Tax examination group which is located at the Service Center. Since this is the only examination group at the Service Center, the mail room employee would assume that the *328 Form 872-T relates to a windfall profits tax examination. Upon receipt of a Form 872-T, the Windfall Profit Tax examination group generally determines whether the form relates to any examinations then ongoing in the group. If it does not, the examination group would do one of the following: (a) if it could be determined from the Form 872-T or the envelope in which it was mailed that the Form 872-T should be forwarded to a particular District Director's office, the Form 872-T would be forwarded to that office; or (b) respondent's computer records would be searched to determine to which District Director's office the Form 872-T should be routed. Neither the Service Center nor the Windfall Profit Tax examination group maintains records from which it can be determined if the above-described procedures were followed with respect to the Forms 872-T in this case. Upon receipt of a Form 872-T by the office of the District Director for Austin, a responsible person would give the form priority treatment and would determine if the form related to an audit being considered by that office. If so, the Form 872-T would be associated with the file. If the Form 872-T did not relate to *329 a case being considered by the Austin District, a computer search would be promptly conducted to determine which office was considering the case. Upon identification of the proper district, the responsible person would telephone a responsible person in the proper district, advise the person as to the date of receipt of the Form 872-T, and forward the Form 872-T to the proper district. When the Forms 872-T were accepted at the Service Center, respondent's computer records indicated that the Houston office was considering the audits in question. There is no record in the files of the District Director for the Austin District as to whether the Austin District received the Forms 872-T in question, or whether the procedures described above were followed with respect to the said Forms 872-T. Neither party was able to explain what happened to the Forms 872-T after they were accepted by the Service Center. Mr. Batte had dealt with the Internal Revenue Service on behalf of some of his clients, and had some knowledge of Internal Revenue Service practice and procedure although this was not his main area of practice. Before mailing the Forms 872-T, he consulted the tax partners in his firm *330 as to how to terminate the Forms 872-A. No one informed him that the Forms 872-T should be mailed to the Service Center. On February 10, 1986, at respondent's request, petitioners mailed photocopies of the Forms 872-T to a Houston field office of the District Director for Houston, located at 9809 Rowlett, Houston, Texas 77085. The copies of the Forms 872-T were received by the Houston office on February 11, 1986. The statutory notice of deficiency upon which this case is based was issued by the District Director for the Houston District on May 6, 1986. The notice was issued 84 days after the Houston office received the photocopies of Forms 872-T, but more than one year from when the original Forms 872-T were accepted by the Service Center. OPINION The question in this case is whether the statute of limitations bars the assessment of tax for the 1976, 1977 and 1978 taxable years. Section 6501(a) [1] provides as a general rule that taxes must be assessed within three years of when a tax return is filed. A taxpayer and the Secretary can alter this rule by agreement. Section 6501(c)(4). Petitioners and respondent did extend the period of time for the assessment of tax in *331 this case. The question we must answer is when petitioners effectively terminated their consent. We have two conflicting interpretations to aid us in our determination. According to respondent, the face of the Form 872-A, which Mr. Batte acknowledges he read, requires that the office considering the taxable year in question receive the Form 872-T before the consent is effectively terminated, and before the statute of limitations begins to run again. Respondent contends that the Form 872-T was sent to the wrong office and that even if the Austin office was the correct office, petitioners used an incorrect zip code. Respondent claims that as a result of petitioners' error respondent never received the original Forms 872-T, executed on April 8, 1985. The office considering the case did not receive any Forms 872-T until February 11, 1986, when petitioners sent photocopies to the District Director in Houston. The notice of deficiency was mailed 84 days later on May 6, 1986. Thus, concludes respondent, the statute of limitations was still open when the deficiency notice was *332 mailed. Petitioners' version and interpretation of the facts present a much different focus. Petitioners admit that they used an incorrect zip code in mailing the Forms 872-T by certified mail, and that the zip code used was that of the Service Center in Austin. However, according to petitioners, the Forms 872-T were signed for by the Service Center and through normal Internal Revenue Service procedures should have been promptly directed to the Austin District Director's office. If in fact Houston was the correct district, the forms should have been forwarded to the Houston District Director's office. According to petitioners, respondent bears the burden of proving that the original Forms 872-T, received by the Service Center on April 15, 1985, were not received by the office considering their case. While respondent does not dispute that, as addressed, the Forms 872-T should have been routed to the appropriate District Director, he disagrees about the burden of proof in this case. The substantive question we must answer is whether the Forms 872-T were "received" on April 15, 1985, February 11, 1986, or some other date for purposes of terminating the consents to extend the *333 period of assessment in this case. This is so because the agreement between the parties was that the Forms 872-T had to be received by the office considering the case in order to terminate the consents to extend the statute of limitations. For the reasons stated below, rather than those espoused by respondent, we find the Forms 872-T were received on February 11, 1986. The determinative facts of this case are as follow: Petitioners addressed the Forms 872-T to the District Director in Austin. Petitioners sent the forms, certified mail, return receipt requested. The forms were delivered to the Internal Revenue Service Center in Austin for three reasons: (1) petitioners used the Service Center's zip code in the mailing address, (2) "Internal Revenue Service" appeared in the name of the addressee, and (3) petitioners failed to include a street address for the District Director. A Service Center employee, who was not authorized to accept mail on behalf of the District Director accepted the Forms 872-T. The receipts indicating that the forms were accepted were returned to petitioners. The return receipts clearly indicate that they were accepted by the Internal Revenue Service *334 Center on Interregional Highway rather than the District Director, located at 300 E. 8th Street. Petitioners sent the Forms 872-T certified mail, return receipt requested. At least one of the reasons a person sends a letter by certified mail is to ensure that the person to whom the letter is addressed actually receives the letter. In fact, a portion of the return receipt is set aside for the signature of the addressee or their agent. In this case the forms were accepted by the Internal Revenue Service Center in Austin on April 15, 1985. The Internal Revenue Service Center in Austin was neither the addressee nor an agent of the addressee. Thus, the Service Center was not authorized to accept the forms. Respondent claims that petitioners must bear the risk of loss because they misaddressed the envelope and the Forms 872-T cannot effectively terminate a consent until received by the office considering the case. Respondent has reached the correct result, but has not clearly articulated the correct reason. It is indisputable that petitioners used an incorrect zip code and as a result the forms went to the incorrect office. By using certified mail, however, petitioners tried to *335 insure against this type of mistake. The Service Center employee accepted the mail and stamped the return receipt with the Service Center's complete name and address. Although the Service Center had no right to accept the forms, petitioners were not harmed by the Service Center's actions. The lack of harm in this case is evident from the return receipt. If petitioners had looked at the return receipt they should have realized that the District Director did not receive the Forms 872-T. With this knowledge, petitioners could have sent new Forms 872-T to the District Director at the correct address, or they could hope the original forms made it to the correct person. In opting to follow the second course of action, petitioners bear the risk that the forms will not be transferred to the office considering the case. This decision is consistent with our prior decisions addressing the requirements to terminate a special consent to extend the time for the assessment of tax. In , affd. without published opinion , we held that the Form 872-T in question was not received until actually received *336 by the office considering the taxpayers' case. There the taxpayers sent their Form 872-T to the Internal Revenue Service Center in Philadelphia via certified mail. This case presents slightly different facts in that petitioners addressed the envelope to the District Director rather than merely to the Internal Revenue Service. Nonetheless, an identical result is warranted. In Valk, the Service Center was in fact the addressee and was therefore authorized to accept the form which was sent certified mail and needed to be signed for. In this case the Service Center was not authorized to accept the forms. Under the facts of this case, however, receipt by the Service Center, even though unauthorized, is not enough to deem the forms received by the office considering the case. Here, petitioners were notified by return receipt that their Forms 872-T were accepted by the Service Center. Therefore, if they chose to, they could have prevented any delay or loss of the forms by sending new copies to the District Director at the correct address. This case is also distinguishable from those cases in which the Court held that an incorrect zip code did not negate an otherwise proper address. *337 See, e.g., ; . In those cases the taxpayers included a complete, correct street address. In this case petitioners did not use any street address. [2]
In this case both parties made significant errors. Petitioners used an incorrect zip code. A Service Center employee of respondent, unauthorized to do so, accepted delivery of the forms. Respondent apparently did not correctly route the forms, once accepted, to the appropriate party. And, petitioners neglected to inspect the return receipt which clearly indicated the forms were accepted by the someone other than the addressee. *338 While it may seem unfair to hold only one party responsible for all of these errors, the fact remains that petitioners' original mistake initiated the problem; and petitioners' second mistake caused the ultimate harm. This is so because even if respondent had correctly routed the forms to the appropriate office, the statute of limitations would not have started again until that office had received the Forms 872-T. See , affd. by unpublished order 5th Cir. 1987, cert. denied U.S. , ; ; We will not assume that if the forms had been correctly routed respondent would have allowed the statute of limitations to expire. We also reject petitioners' contention that the burden of proof determines the outcome of this case. The Tax Court Rules of Practice and Procedure clearly indicate that generally petitioners bear the burden of proof. Rule 142(a). In very limited exceptions the burden of proof is on respondent. Rule 142. Otherwise, it is only the burden of production which may be shifted *339 to respondent. In this case petitioners raised the statute of limitations by showing that the notice of deficiency was sent more than three years after petitioners tax returns were filed. In this situation respondent must come forward with evidence that an exception to the statute of limitations exists. . Respondent has demonstrated that an exception to the statute of limitations existed, i.e., petitioners consented to an extension of the time to assess tax. Thereafter it is petitioners' burden to provide evidence and persuade the Court that the exception does not apply. Furthermore, petitioners' reliance on , in support of their position is misplaced. In that case the Court of Appeals held that where respondent was relying on section 6501(e)(relating to a 25 percent omission of gross income) to extend the statute of limitations beyond the three year period, respondent was not entitled to a presumption that the bank deposits relied upon were taxable. Instead, respondent had to prove the amounts were taxable in order to rely on section 6501(e) in extending *340 the statute of limitations. This case presents a different exception and therefore what respondent must prove is different. Here respondent relies on the Forms 872-A to extend the statute of limitations. Section 6501(c)(4). To meet his burden respondent only needs to prove that valid consents were signed. It is petitioners who must demonstrate that the consents were effectively terminated. Petitioners have failed to meet this burden. We understand that petitioners believe it is unfair to hold them responsible to prove receipt of the Forms 872-T by the office considering their case. However, it seems clear to the Court that the Forms 872-T were received by the Service Center on April 15, 1985, and the whereabouts of the forms cannot be traced after that date. However, as discussed above, petitioners did not have to leave the fate of their Forms 872-T for respondent to properly deliver. Petitioners had the ability to control whether the office considering their case received the termination notices. Under these circumstances we deem it entirely appropriate for petitioners to bear the risk of loss. While petitioners claim there is no proof the forms were lost, we find it to *341 be the only logical conclusion. That is, the forms were received by the Service Center and there is no record that the forms were received by either the Houston or Austin District Directors. Therefore, it is more probable than not that the forms were lost. Finally in regard to this issue, we note that petitioners are no worse off than any other taxpayer who incorrectly sends a Form 872-T to the wrong Internal Revenue Service office. In those cases we have held that the Forms 872-T were not effective until actually received by the office considering the case. See ;; The only real difference here is that petitioners sent the forms via certified mail and were notified that the wrong office actually received the Forms 872-T. In those cases, as here, the Internal Revenue Service had a procedure to route the forms to the correct office. In those cases we did not require respondent to prove nonreceipt of the forms and we decline to do so now. We find that the Forms 872-T were received on February 11, 1986. The statute of limitations *342 expired 90 days thereafter. The notice of deficiency mailed May 6, 1986 was timely. An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code as in effect during the years in issue.↩
2. We do note, however, under the circumstances of this case, that the Forms 872-T could have been properly addressed either to the Houston District Director, who was actually considering the case, or the Austin District Director which was the last office to contact petitioners. Even though Mr. Batte was aware that the Houston District existed, it does not follow that, without notice, a reasonable person would assume cases pending in the Austin District would be transferred to Houston.↩