United States Court of Appeals,

Eleventh Circuit.

No. 94-6551.

John C. COGGIN, III, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Jan. 4, 1996.

Appeal from a Decision of the United States Tax Court.

Before TJOFLAT, Chief Circuit Judge, DYER, Senior Circuit Judge, and GARTH[*], Senior Circuit Judge.

GARTH, Circuit Judge:

The United States Tax Court disallowed certain deductions taken by the taxpayer, John C. Coggin, III, on his 1980, 1981 and 1982 federal income tax returns. The Tax Court assessed deficiencies in the amount of $128,941.30; and additions to tax, pursuant to I.R.C. §§ 6653 (Additions to Tax for Negligence and Fraud) & 6661 (Additions to Tax for Substantial Understatement of Liability), in the amount of $15,144.05, plus 50% of the interest due on the deficiencies for the 1981 and 1982 tax years. Coggin appealed the Tax Court decision, asserting two alternative grounds for reversal: (1) the three-year statute of limitations barred assessment and collection of the alleged deficiencies; and (2) the Tax Court erred in disallowing his claimed deductions and in assessing penalties and additions to tax.

The Tax Court rejected Coggin's statute of limitations defense, holding that Coggin's attempted termination of his

---

[*]Honorable Leonard I. Garth, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

agreements to extend the limitations period was ineffective. Specifically, the Tax Court found that Coggin, in an effort to mislead the IRS, had mailed the termination notices, Form 872-T, to the wrong division within the district office. Reasoning that the incorrectly addressed termination notices were ineffective, the Tax Court concluded that the notice of deficiency, issued by the Commissioner within ninety days of the discovery of the termination notices, was timely. We will affirm the decision of the Tax Court.

This court has jurisdiction to review the final order of the Tax Court pursuant to 26 U.S.C. § 7482(a)(1). Venue is proper pursuant to 26 U.S.C. § 7482(b)(1)(A).

## I.

The relevant facts, which are either stipulated by the parties or taken from the Tax Court's opinion, are as follows. The taxpayer, John C. Coggin, is an experienced tax and natural resources attorney, who has represented clients before the Internal Revenue Service (IRS) and has authored various articles on taxation of natural resources. Since 1974, Coggin has performed legal work for clients in the coal industry and, in fact, has prepared tax opinions for various coal-mining limited partnerships. According to his biography, published in the Martindell-Hubbell Law Directory, Coggin served on the American Bar Association (ABA) Committee on Natural Resources, Taxation Section, and chaired the Natural Resources Subcommittee on Coal Taxation.

During the late 1970s, Coggin began performing substantial legal work for Richard W. McIntyre, including legal services for two coal-mining limited partnerships that had been organized by

McIntyre: Energy Resources, Limited (ERL) and Virginia Partnership, Limited (VPL). Coggin prepared tax opinions, which were included in the private placement offering materials for both partnerships. Coggin also played a key role in negotiating certain coal lease and sublease agreements on behalf of ERL and VPL. In addition, Coggin participated as a limited partner in both ERL and VPL.

ERL and VPL, in 1979 and 1980 respectively, entered into lease agreements to mine and market, as lessee or sublessee, all of the coal underlying certain land in Kentucky and Virginia. These lease transactions, which were the subject of two Tax Court opinions, are described in detail in *Walden v. Commissioner,* 55 T.C.M. (CCH) 332, 1988 WL 17671 (1988), and *Bauman v. Commissioner,* 55 T.C.M. (CCH) 435, 1988 WL 23559 (1988). Under these lease agreements, ERL and VPL were obligated to pay annually, irrespective of production, certain advance royalties to lessors or sublessors. Initial royalty payments would be in the form of cash and recourse promissory notes; subsequent payments, however, would be in the form of nonrecourse promissory notes, which would not mature for twenty to thirty years.

On his 1980, 1981 and 1982 federal income tax returns, Coggin claimed deductions with respect to his investment in ERL and VPL of $90,259, $84,297, and $74,105 for each respective tax year. The Examination Division of the IRS District Director's Office at Birmingham, Alabama, initiated an audit of Coggin's 1980 return and subsequently extended the scope of the audit to include Coggin's 1981 and 1982 returns. The Examination Division challenged the

deductions related to the coal-mining limited partnerships, as well as certain alimony and interest deductions taken by Coggin on his 1980 return.

Coggin acceded to the Commissioner's proposed adjustments regarding the alimony and interest deductions, and agreed to pay the $2,500 deficiency assessed by the IRS. On February 10, 1986, Coggin forwarded his $2,500 payment to Marilyn Toney, a revenue officer in the Collection Division of the Birmingham District Director's Office. Revenue officers, such as Ms. Toney, do not examine returns, but rather collect delinquent taxes after they have been assessed. Other than advising Coggin of the balance due on his assessed tax liability related to the disallowed alimony and interest deductions on his 1980 return, Ms. Toney did not discuss any aspect of the continuing audit of Coggin's 1980, 1981 and 1982 income tax returns. After Coggin paid the assessment, Ms. Toney and Coggin did not have any further conversations.

During the course of the audit, at the request of the IRS, Coggin agreed to waive the three-year statute of limitations for assessment of deficiencies. Specifically, Coggin and the IRS entered into a series of agreements to extend the time during which the IRS could make an assessment.[1]

_____

[1] On February 17, 1984, Coggin executed a form agreement to extend the period for the assessment of taxes for the 1980 tax year to December 31, 1984. On October 25, 1984, Coggin executed another agreement to extend indefinitely the time to assess tax for the 1980 tax year.

On June 3, 1985, Coggin executed a form agreement to extend the limitations period with respect to the 1981 tax year to September 15, 1985. On September 4, 1985, Coggin executed another agreement, extending the limitations period for the 1981 tax year to September 30, 1986, Finally, on

With respect to the 1981 tax year, Coggin, on April 22, 1986, executed Form 872 (Consent to Extend the Time to Assess Tax), which extended the limitations period to September 30, 1987. Specifically, the Form 872 executed by Coggin provided in pertinent part:

> The amount of any Federal Income tax due on any return made by or for the above taxpayer(s) for the period(s) ended December 31, 1981 may be assessed at any time before September 30, 1987....  This agreement ends on the earlier of the above expiration date or the assessment date of an increase in the above tax that reflects the final determination of tax and the final administrative appeals consideration....

With respect to the 1980 and 1982 tax years, Coggin, on October 25, 1984 and April 22, 1986 respectively, executed a separate Form 872-A (Special Consent to Extend the Time to Assess Tax) for each tax year.  In contrast to Form 872, Form 872-A extends the limitations period indefinitely rather than for a time certain.  Specifically, Form 872-A contained the following language:

> The amount of any Federal Income tax due on any return made by or for the above taxpayer(s) for the period(s) ended [either December 31, 1980 or December 31, 1982] may be assessed on or before the 90th day after:  (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s), or (b) the Internal Revenue Service mails Form 872-T to the taxpayer(s);  or (c) the Internal Revenue Service mails a notice of deficiency....

On July 9, 1986, the Birmingham District Director issued a so-called "30 day letter," accompanied by an examination report, detailing the adjustments (to Coggin's 1980, 1981 and 1982 returns)

---

April 22, 1986, Coggin executed an agreement to extend the time to assess tax for the 1981 tax year to September 30, 1987.

   On April 22, 1986, Coggin also executed an agreement to extend indefinitely the limitations period for the 1982 tax year.

that the IRS deemed necessary.  The "30 day letter" advised Coggin that his case would be processed on the basis of the adjustments contained in the examination report unless Coggin filed objections with Victoria Knowe, an examination officer in the Birmingham office.

In response to the "30 day letter," Coggin sent a letter dated July 21, 1986, expressing his general objections and requesting a conference with the appeals office.  The letter was addressed:

> Victoria Knowe Mail Stop 214 Internal Revenue Service Center 500-22nd Street South Birmingham, Alabama 35233.
>
> Re:  Reply Reference Code:  435:RN

Coggin subsequently sent Ms. Knowe a second letter, dated August 28, 1986, apprising the IRS of his intent to file a written protest by September 30, 1986.  That letter was addressed in the identical manner as the earlier July 21, 1986 letter.  Ultimately, Coggin filed a written protest dated September 26, 1986.  He addressed the protest letter to:

> District Director Internal Revenue Service 500-22nd Street South Birmingham, Alabama 35233 Attention:  Victoria Knowe
>
> Re:  Your Reply Reference:  435:N

Ten days later, on October 6, 1986, Coggin executed two Forms 872-T (Notice of Termination of Special Consent to Extend the Time to Assess Tax), purporting to terminate the agreements which had extended the statute of limitations for Coggin's 1980, 1981 and 1982 tax years.  One form referenced the 1980 tax year;  and the other form referenced the 1981 and 1982 tax years.

Significantly, the back of Form 872-T included the following instructions:

> If the tax returns to which this notice applies is under consideration by the Examination Division, mail this notice to the District Director of Internal Revenue having jurisdiction over the return(s), *Attention: Chief, Examination Division.*

> . . . . .

> If the tax return(s) to which this notice applies is under consideration by Appeals, mail this notice to the *Chief, Appeals Office,* having jurisdiction over the return.

I.R.S. Form 872-T (Rev. 7-80) (emphasis supplied).

Despite the clear instructions, Coggin mailed the forms, on October 8, 1986, by certified mail, return receipt requested, to Ms. Toney at the following address:

> Ms. M. Toney Internal Revenue Service Revenue Agent Internal Revenue Service 500-22nd Street South Room 330 Birmingham, Alabama 35233.

The return receipt form and certified mail receipt, on the other hand, were addressed differently:

> Ms. M. Toney Attn: Chief Examination Division 500-22nd Street South B'ham, Ala. 35233.

The mail clerk at the IRS signed the return receipt form, which was returned to Coggin. The clerk also signed a Postal Service form, acknowledging receipt of all certified mail items listed on that form. The clerk retained a photocopy of the certified mail list but did not retain a copy of the return receipt. In accordance with standard operating procedure, a mailroom employee annotated the certified mail list with the mail stop or room to which each mail item was directed. Notably, the Birmingham district office has fifty to sixty mail stops. The employee who annotated the certified mail list personally knew Ms. Toney and recognized that Ms. Toney's office was in Room 310, not Room 330, as addressed. Accordingly, the mailroom employee wrote

"310" on the envelope and left a note in Box 310, advising that a certified letter had arrived for someone in Room 310.

Subsequently, a clerk for the revenue officers in Room 310 picked up the certified mail for Ms. Toney, and delivered the envelope to her. Upon opening the envelope, Toney found the two forms, which she did not recognize, and a cover letter, stating:

> Enclosed please find the Forms 870-T [sic] for my file which you suggested I return to you some time ago.
>
> Thank you for your assistance in connection with the conclusion of my case.

Toney was unfamiliar with Form 872-T because it was not a form used by the Collections Division. Because Toney was not aware of any active collection cases regarding Coggin, she placed the envelope and its contents in a "To be associated" file in anticipation that a case would be assigned to her.[2]

Pursuant to Coggin's September 26, 1986 protest, Coggin's case was transferred to the Appeals Division. On November 21, 1986, Benjamin Whitten, an appeals officer, phoned Coggin and asked if Coggin wished to accept the IRS's settlement offer, which would allow Coggin to take deductions to the extent of his cash investment in the partnerships. Coggin stated that he intended to accept the offer and agreed to provide documentation of his cash payments to ERL and VPL. Coggin never mentioned his 872-T forms then or anytime in the next seven months during the course of the

---

[2]Coggin claims that he included a "routing memo" with the letter, which instructed Toney: "Please deliver the enclosed to the Chief, Examination Division." The Tax Court, however, made a finding of fact that no "routing memo" was enclosed with his letter. The court found that Coggin's testimony and that of his secretary (now his wife) were not credible.

settlement negotiations.

On January 29, 1987, Whitten again extended the same settlement offer and requested a response within thirty days. Coggin requested and received several extensions to file the appropriate documents.

In April 1987, because Coggin's Form 872 for 1981 was due to expire on September 30, 1987, Whitten issued Coggin an ultimatum, offering him three options: (1) conclude a settlement; (2) extend the limitations period again; or (3) face a notice of deficiency. On June 29, 1987, Coggin's secretary informed Whitten that Coggin, in October 1986, had executed two Form 872-Ts purporting to terminate the extensions of the limitations period.

Whitten immediately investigated and eventually discovered, on July 1, 1987, Coggin's October 1986 letter in Toney's files. On August 14, 1987, the Commissioner issued a notice of deficiency to Coggin for approximately $150,000.

Coggin then filed a petition with the Tax Court, asserting that the notice of deficiency was time-barred; that the Commissioner had erroneously disallowed the ERL and VPL deductions; and that the Commissioner had erroneously assessed additions to tax.

The Tax Court rejected Coggin's statute of limitations defense. The court, among other findings of fact, found that Coggin had attempted to mislead the IRS by sending the Form 872-T's to Ms. Toney rather than the Chief of the Examination Division. The court, as noted (see note 2 *supra* ), rejected the testimony of Coggin and his secretary that Coggin had included a routing memo,

directing Ms. Toney to forward the forms to the Chief of the Examination Division. Reasoning that Coggin was obliged to send the forms to either the Examination or Appeals Division of the Birmingham district office, the court held that the Form 872-Ts were not received until July 1, 1987 when Whitten recovered them from Toney. Therefore, under the Tax Court's reasoning, the notice of deficiency was timely, resulting in its decision in favor of the Commissioner.

On the merits, the court determined that the partnership deductions were not proper.[3] The Tax Court affirmed most of the penalties, including those at issue in this appeal. Coggin filed a timely notice of appeal to this court.

## II.

We review the Tax Court's fact findings for clear error. *Blohm v. Commissioner,* 994 F.2d 1542, 1548 (11th Cir.1993). We exercise plenary review, however, over the Tax Court's interpretation and application of the Internal Revenue Code. *Id.*

We will not find clear error unless our review of the record

---

[3]The Tax Court determined that the coal-mining limited partnerships in which Coggin had invested were not engaged in for-profit activities, and therefore concluded that the deductions taken by Coggin, related to claimed development expenses, were improper. Accordingly, the Tax Court held Coggin liable for the deficiencies and additions to tax recited above. In his brief submitted to us, Coggin challenged the Tax Court's rulings as to the propriety of the deductions he had taken and the Commissioner's assessment of penalties.

We have reviewed these issues and the conclusions of the Tax Court, and are satisfied that Coggin's arguments are meritless. We do not believe these issues warrant extended discussion. Accordingly, we will affirm the Tax Court's decision as to those issues without further elaboration. The only issue requiring a more detailed analysis is the statute of limitations issue, discussed in the text *infra.*

leaves us "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *see also Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We may not substitute our own findings of fact for that of the district court, and may reverse only "if the record lacks substantial evidence to support [the district court's findings]." *Thelma C. Raley, Inc. v. Kleppe,* 867 F.2d 1326, 1328 (11th Cir.1989).

Before us, Coggin continues to argue the facts, contending, for instance, that he included a routing slip with the Form 872-Ts he submitted to Ms. Toney. Coggin asserts that the trial court erred in failing to accredit certain witnesses and in drawing allegedly incorrect inferences from the evidence. We conclude, however, that the Tax Court made no mistake in its findings of fact, and that there is more than sufficient credible evidence to sustain each and every one of the Tax Court's findings challenged by Coggin. Giving appropriate deference to the Tax Court's findings, we hold that the Tax Court has not committed clear error, and we will affirm its decision.

## III.

On October 8, 1986, Coggin sought to terminate his earlier consent to extend the limitations period for the 1980, 1981 and 1982 tax years. He attempted to effectuate the termination by mailing two copies of Form 872-T (Notice of Termination of Special Consent to Extend the Time to Assess Tax), in a single envelope, by certified mail, return receipt requested, to the Birmingham

District Office.

One form pertained to the 1980 tax year; and the other pertained to the 1981 and 1982 tax years. The envelope, addressed to Ms. Toney, was received by the Birmingham District Office on October 14, 1986. Coggin argues that the notice of deficiency, issued some ten months later on August 14, 1987, was therefore untimely and hence the assessments relating to his 1980, 1981 and 1982 tax returns were time-barred.

In response, the Commissioner contends that the Form 872-Ts executed by Coggin, purportedly terminating the previously agreed to extensions, were ineffective because the forms were not mailed to the proper address, that is, to the Chief of the Examination Division. Embracing the Commissioner's theory that Coggin's attempt to terminate the extensions was ineffective because Coggin mailed the forms to the wrong address, the Tax Court rejected Coggin's statute of limitations defense.

I.R.C. § 6501(a) mandates that "the amount of any tax imposed ... shall be assessed within 3 years after the return was filed...." However, section 6501(c)(4) permits the Commissioner and the taxpayer to extend the limitations period by entering into a written agreement at any time "before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title...." An agreement by a taxpayer consenting to an extension of the statutory limitations period is "a voluntary, unilateral waiver of a defense by the taxpayer." *Stange v. United States,* 282 U.S. 270, 276, 51 S.Ct. 145, 147, 75 L.Ed. 335 (1931); *accord Feldman v. Commissioner,* 20 F.3d 1128, 1132 (11th Cir.1994).

In Revenue Procedure 79-22, 1979-1 C.B. 563, the Commissioner has set forth the procedures for waiving the statute of limitations and for terminating such waivers. To execute a waiver for a defined period, the taxpayer may file Form 872 and specify a new expiration date for the limitations period.[4]

Alternatively, the taxpayer may file an indefinite waiver, using Form 872-A. As provided in the Revenue Procedure and on the form itself, the taxpayer may revoke his consent given on Form 872-A only by filing Form 872-T with "the Internal Revenue Service office considering the case." The Commissioner must then make an assessment within ninety days of the date when the "Internal Revenue Service office considering the case receives Form 872-T...." On the other hand, the Commissioner may revoke the waiver by filing and mailing her own Form 872-T, or by mailing a notice of deficiency to the taxpayer.

Form 872-T contains detailed mailing instructions, clarifying Form 872-A's instructions and language: "The amount(s) of ... tax ... may be assessed ... after ... the Internal Revenue Service *office considering the case* receives Form 872-T...." (emphasis added) Specifically, Form 872-T requires that the taxpayer mail the form to "the District Director of Internal Revenue having

---

[4]The Commissioner argues, in the alternative, that a Form 872 extension cannot be terminated by filing a Form 872-T. The Commissioner posits that even if Coggin had properly filed Form 872-T, the filing of Form 872-T could not, and did not, terminate his agreement to extend the time to assess tax for the 1981 tax year. Because we hold that Coggin's attempt to terminate his consents to extend time to assess tax was wholly ineffective, we do not reach the issue of whether a Form 872 extension can ever be terminated by the filing of Form 872-T, which unilaterally sought the extension earlier than originally provided in the Form 872.

jurisdiction over the return(s), *Attention: Chief, Examination Division*" (emphasis added) if the tax return is under consideration by the Examination Division.  Alternatively, if the tax return is under consideration by the Appeals Division, the taxpayer should mail the form to "*the Chief, Appeals Office,* having jurisdiction over the return(s)" (emphasis added).

Revenue Procedure 79-22, 1979-1 C.B. 563, emphasizes that the taxpayer must properly address Form 872-T in order to terminate a Form 872-A extension:

> Written notification to the Internal Revenue Service from taxpayer(s) of an election to terminate Form 872-A is to be made using Form 872-T.  Taxpayer(s) should sign and mail Form 872-T *in accordance with the instructions contained on the form.* (emphasis added)

Noting that Form 872-A advises the taxpayer that Form 872-T should be sent to the "Internal Revenue Service office considering the case," Coggin urged this court to construe the term "office considering the case" to mean the district office having jurisdiction over the case and not some division within the district office.  Coggin argued that delivery of Form 872-T to the mailroom of the Birmingham District Office is sufficient to effectuate a termination of previously executed extension agreements.  The flaw in Coggin's argument is that it treats the unambiguous, mandatory instructions on Form 872-T as merely hortatory.

The Tax Court has repeatedly emphasized that " "meticulous compliance by the taxpayer with all named conditions' is necessary to start the running of the statute of limitations on assessment." *Burke v. Commissioner,* 53 T.C.M. (CCH) 1279, 1281, 1987 WL 40474

(1987) (quoting *Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 249, 50 S.Ct. 297, 299, 74 L.Ed. 829 (1930)). In particular, the Tax Court has stressed the importance of strict compliance with mailing instructions in order to terminate a Form 872-A extension. *See, e.g., Scherr v. Commissioner,* 65 T.C.M. (CCH) 2064, 1993 WL 69560 (mailing of Form 872-T ineffective because misaddressed to 230 South Dearborn, location of District Director's office, instead of 219 South Dearborn, location of Appeals Division); *Giffin v. Commissioner,* 63 T.C.M. (CCH) 2908, 1992 WL 86035 (1992) (Form 872-T sent to wrong person and wrong district office did not effectuate a termination), *aff'd,* 26 F.3d 130 (9th Cir.1994); *Corrado v. Commissioner,* 61 T.C.M. (CCH) 2944, 1991 WL 106274 (1991) (hand delivery of 872-T to IRS taxpayer services reception area, without routing instructions, ineffective); *O'Harren v. Commissioner,* 60 T.C.M. (CCH) 20, 1990 WL 89566 (1990) (mailing to Fresno District Director's office ineffective when Laguna Niguel office was examining taxpayers' return); *Batte v. Commissioner,* 57 T.C.M. (CCH) 833, 1989 WL 69684 (1980) (mailing of 872-T ineffective because addressed to Austin Internal Revenue Service Center rather than to Austin District Director); *Hale v. Commissioner,* 55 T.C.M. (CCH) 1127, 1988 WL 62319 (1988) (mailing 872-T to Examination Division in Fresno, California, ineffective when taxpayers' return was under consideration by Appeals Division of Phoenix, Arizona district office); *Burke,* 53 T.C.M. at 1279 (hand delivery to teller in Collection Division ineffective when case was under consideration by Examination Division); *Brown v. Commissioner,* 51 T.C.M. (CCH) 1171, 1986 WL 21952 (1986) (mailing 872-T to IRS

Center in Austin, Texas ineffective when El Paso office was examining returns), *aff'd,* 817 F.2d 754 (5th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987). *Cf. Tapper v. Commissioner,* 766 F.2d 401, 404 (9th Cir.1985) (holding that taxpayers' letter purporting to terminate 872-A extension was ineffective "because it was not directed to the proper division and that division was never apprised of taxpayers' desire to terminate the extension").

Coggin cites *Freedman v. Commissioner,* 51 T.C.M. (CCH) 1264, 1986 WL 21967 (1986), in support of his assertion that delivery of Form 872-T to the mailroom of the Birmingham District Director's office sufficiently complies with IRS requirements. *Freedman* does not, however, support Coggin's position, and indeed severely undermines his argument. In *Freedman,* the taxpayer hand-delivered a Form 872-T, marked "District Director of Internal Revenue, Attn: Chief Examination Division." The Tax Court held in *Freedman* that "delivery of the Form 872-T, *marked for the attention of the Chief, Examination Division* ..., is sufficient notice to the "office considering the case.' " *Id.* at 1265 (emphasis added). Unlike Freedman, Coggin did not indicate on the envelope that the enclosed forms should be sent to the Chief of the Examination Division.

Coggin insists that he did include a routing slip directing Ms. Toney to "[p]lease deliver the enclosed to the Chief, Examination Division." The Tax Court found, as we have earlier noted, however, that "[c]ontrary to [Coggin's] claim, no routing memorandum slip requesting that Ms. Toney forward the enclosed Forms 872-T to the Chief of the Examination Division was attached

to or enclosed with the letter sent to Ms. Toney."

The Tax Court's finding is supported by Ms. Toney's testimony that she had received no routing information. In addition, Coggin's assertion that he attached a routing memo appears inconsistent with his cover letter, which advised Ms. Toney that he was returning the forms, at her request, to be filed with the rest of her records on his case. Indeed, the Tax Court found that Coggin's cover letter was "intended to, and did in fact, mislead Ms. Toney." It should be remembered that Ms. Toney's sole contact with Coggin occurred some eight months previously and was limited to the collection of a deficiency related to Coggin's deduction of alimony and interest payments on his 1980 tax return. We cannot say, on this record, that the Tax Court's finding is clearly erroneous.

Coggin next argues that the IRS should be held to constructive notice of the address shown on the return receipt, which did indicate that the letter should be forwarded to the Chief, Examination Division. The Tax Court rejected this argument, as do we. As noted by the Tax Court, the return receipt is not retained by the recipient but rather is returned to the sender as proof of mailing.

Although an IRS mailroom employee did sign the return receipt, there is no evidence that the employee noticed the discrepancy between the address shown on the return receipt and the address on the envelope. In normal course, a certified letter bears an address matching the address listed on the return receipt, as both are prepared by the sender. We are not about to hold the IRS to

constructive knowledge of the address on a return receipt, as doing so would compel the IRS to cross-check every return receipt with its matching envelope for each of the myriad certified letters the IRS receives.

Significantly, the fact that the return receipt reflected the proper address establishes that Coggin knew where he should send the Form 872-Ts. Coggin argues that he could not have known whether his case was being considered, at the time, by the Examination Division or by the Appeals Division because he had only recently filed an appeal. Coggin further asserts that it would be unduly onerous to require the taxpayer to ascertain which division currently had jurisdiction over the taxpayer's case.

We need not, on these facts, decide whether a termination notice sent to the Examination Division would be effective when the taxpayer's files had recently been transferred to the Appeals Division. Regardless of whether Coggin had actual knowledge that his case had already been transferred to the Appeals Division, it is clear that Coggin, as an experienced tax practitioner, knew or should have known that the Collections Division was not the "Internal Revenue Service office considering the case." Coggin must have realized that Marilyn Toney, a collections agent no longer involved in his case, was not the appropriate addressee.

Furthermore, the Tax Court, as we have observed, found that Coggin's letter misled Ms. Toney. The Tax Court opinion states:

> More importantly, the attachment of the purported routing memorandum was totally inconsistent with the statements contained in [Coggin's] cover letter to Ms. Toney. In the letter, [Coggin] advised Ms. Toney that the enclosed "Forms 870-T" [sic] were for Ms. Toney's case file on Mr. Coggin and stated that she had previously suggested they be returned to

her by Mr. Coggin. [Coggin] ended the letter by thanking Ms. Toney for her prior assistance in concluding [Coggin's] Collection Division case. Upon questioning by the Court, [Coggin] could give no satisfactory explanation for these statements in his letter to Ms. Toney—if, in fact, [Coggin] meant to have the enclosed Forms 872-T routed to someone else.

The record satisfies us, as it satisfied the Tax Court, that the relevant division of the IRS had no knowledge of Coggin's attempt to terminate the extensions of the limitations period. We agree with the Tax Court that the "filing" of the Form 872-Ts at issue did not take place until July 1, 1987,[5] when Whitten actually discovered them. We therefore hold that the Tax Court correctly ruled that the Commissioner's assessment of deficiencies and additions to tax are not time-barred.

## IV.

For the foregoing reasons, we will AFFIRM the decision of the Tax Court.

---

[5]Our holding here is not meant to be construed to suggest that Coggin, by "filing" his Forms 872-T, could terminate his extension to assess tax with respect to his 1981 tax year. That extension provided that his tax could be assessed "at any time on or before September 30, 1987." *See supra* at 6 & n. 4. We need not, and do not, address that issue.