BARRY A. SCHERR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scherr v. Commissioner
Docket No. 25547-89
United States Tax Court
T.C. Memo 1993-87; 1993 Tax Ct. Memo LEXIS 93; 65 T.C.M. (CCH) 2064; March 15, 1993, Filed *93 For petitioner: R. Stephen Scott. For respondent: Michael W. Bitner and Jeff P. Ehrlich. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a statutory notice of deficiency, determined Federal income tax deficiencies and additions to tax for petitioner's 1980, 1981, and 1982 taxable years. In Scherr v. Commissioner, T.C. Memo. 1991-92, we granted partial summary judgment in favor of respondent. In the prior opinion, we decided that petitioner's counsel effectively extended the period of assessment for petitioner's 1980 taxable year. We also held that petitioner failed to notify respondent of the sale of his personal residence as required by section 1034[1] and section 1.1034-1(i), Income Tax Regs. Therefore, under section 1034(j), respondent's notice of deficiency, as it relates to assessment of the deficiency attributable to the sale of petitioner's personal residence, was timely. Scherr v. Commissioner, supra.
*94 We consider here whether the 6-year period of assessment applies under section 6501(e)(1)(A) for 1980 items not covered by section 1034(j). The 6-year period would apply if petitioner improperly failed to report the proceeds from the sale of his personal residence on his 1980 Federal income tax return. For 1981 and 1982, we also consider whether petitioner revoked his open-ended consent to extend the period for assessment before the notice of deficiency was issued for those years. If we rule for petitioner on any of these issues, computations under Rule 155 will be necessary with respect to the income tax deficiency attributable to the sale of petitioner's personal residence for his 1980 taxable year. If we rule for respondent on either issue, further proceedings may be necessary to resolve nonprocedural issues with respect to the determined deficiencies. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated by this reference. At the time of filing the petition herein, petitioner resided in Quincy, Illinois. In March 1978, petitioner purchased a 122-acre parcel of real property, improved with a house and *95 a barn, in Greenville, California. Petitioner sold this property on June 2, 1980. Petitioner reported the sale of 81 acres of the property on his 1980 Federal income tax return. He failed to report the sale of the remaining 41 acres because it was his personal residence and he intended to purchase a new residence and defer the gain under section 1034. Petitioner was an emergency room physician employed by St. Mary's Hospital in Quincy, Illinois, from April 1980 through June 1983. Petitioner worked 24-hour shifts at the hospital. Petitioner was provided with space at the hospital including a bed, a television, a locker, and places to put his books and materials. From July 1980 through June 1983, petitioner was also employed by the Western Illinois Council on Alcoholism located in Quincy, Illinois. Petitioner's mother, Rita Y. Scherr, acquired, as a residence, property in Park Forest, Illinois, in 1959. Park Forest is approximately 200 miles east of petitioner's place of employment, Quincy, Illinois. In connection with petitioner's intent to defer income on the sale of a portion of his California property, petitioner's mother executed a deed dated September 1, 1981, reflecting *96 the conveyance of the Park Forest property to petitioner for a stated sales price of $ 94,000. The deed was not recorded until February 1983. Petitioner paid his father, George H. Scherr, $ 5,000 in June 1980 and his mother another $ 5,000 in November 1982. Petitioner made those payments under the pretense that they were in part payment of the purchase price. Also on September 1, 1981, petitioner executed a mortgage in favor of his parents. The mortgage reflected an indebtedness of $ 84,000, which was secured by the Park Forest property. According to the mortgage, petitioner was to make monthly payments of $ 1,400 beginning on October 1, 1981, and continuing for 120 months. Petitioner made one $ 1,400 payment in March 1982 to his father, who did not have any ownership interest in the house. The first time petitioner wrote checks to his mother under the mortgage agreement involved 26 checks dated between November 18, 1983, and December 19, 1983, each for $ 1,400. Petitioner made these payments only after an attorney informed his father, who in turn informed petitioner, that if petitioner did not make payments under the mortgage agreement, then the transaction could be considered *97 a sham. Petitioner kept some of his personal belongings at the house in Park Forest. Petitioner used the Park Forest address as his mailing address and he also received mail at the hospital. From 1959 through 1989, petitioner's parents continuously lived at the Park Forest property. On September 30, 1985, petitioner's mother executed a trust agreement transferring the Park Forest property to an Illinois Land Trust. This transfer occurred at a time when petitioner claimed to be the owner of the Park Forest property under the September 1, 1981, deed from his mother. Under the terms of the trust, petitioner's mother retained a beneficial interest for life in the property, and, upon her death, a beneficial interest for life was to pass to petitioner's father, and, upon his death, beneficial interest was to pass to petitioner and his two sisters. On October 3, 1985, petitioner and his father executed a quitclaim deed conveying the Park Forest property to petitioner's mother. On the same day, petitioner's mother executed an Indenture to the trust agreement conveying the Park Forest property to the trust. Also on that same day, petitioner's parents executed a release of the mortgage. *98 Petitioner's mother gave petitioner $ 9,000 on November 12, 1986, to repay him some of the money he had paid in connection with this transaction. Petitioner's mother died on February 1, 1987. On June 27, 1989, the trustee conveyed the Park Forest property to petitioner's father, who in turn sold the property for $ 87,000 to unrelated purchasers on August 24, 1990. On February 22, 1985, petitioner executed a Form 872-A (Special Consent to Extend the Time to Assess Tax) for his 1981 taxable year. In September 1985, petitioner and his attorney, Robert J. Butler (Butler), executed a Form 872-A for his 1982 taxable year. On April 23, 1986, petitioner executed a Form 872-T (Notice of Termination of Special Consent to Extend the Time to Assess Tax) for his 1981 and 1982 taxable years. Petitioner sent the Form 872-T on April 25, 1986, addressed to the Chief, Appeals Office, 230 South Dearborn, Chicago, Illinois 60604. The Form 872-T was sent certified mail, return receipt requested. In April 1986, the matter of petitioner's 1980 through 1982 income tax liabilities was under consideration by Appeals Officer John Betz of the Chicago Appeals Office, located at 219 South Dearborn, Chicago, *99 Illinois. Therefore, petitioner sent the Form 872-T to the wrong address. The return receipt reflected receipt by the Facilities Management Branch mail room on April 29, 1986, of a document directed to the local Appeals Office, but addressed to 230 South Dearborn, not 219 South Dearborn. Petitioner sent the Form 872-T himself, even though he was being represented by an attorney. The instructions attached to the Form 872-T did not reflect any addresses. Petitioner found the 230 South Dearborn address in the telephone directory. The "230 address" was one of two addresses shown for the Internal Revenue Service. That was the address of the District Director for the Internal Revenue Service, but not the Chicago Appeals Office. No address was shown in the directory for Appeals. Petitioner did not consult the attorney representing him before the Internal Revenue Service concerning either the Form 872-T or the address of the appropriate office to which the Form 872-T should be sent. The 230 South Dearborn and the 219 South Dearborn buildings are across the street from each other and an underground tunnel connected the two buildings. The Chicago Appeals Office is not under the jurisdiction *100 of the Chicago District Director's Office. The Facilities Management Branch of the Chicago District Director's Office, located at 230 South Dearborn, was responsible for the delivery of mail addressed to 230 South Dearborn. Appeals had two separate offices in Chicago -- a regional office located in the 230 South Dearborn building and a local Appeals Office in the 219 South Dearborn building. The Facilities Management Branch had procedures for situations where the local Appeals Office's mail was addressed to 230 South Dearborn. First, all the mail was collected in a common bundle. Each business day, a clerk from the Facilities Management Branch mail room arranged to have the mail hand delivered to either the Records Section of the local Appeals Office at 219 South Dearborn, or to the regional Appeals Office, [2] located at 230 South Dearborn. *101 If the mail was delivered by the Facilities Management Branch to the local Appeals Office, a case record reviewer in the local Appeals Office would open and sort mail. If a Form 872-T was included in the misdirected mail, the form would be hand carried by the record reviewer to the secretary for the Chief of the local Appeals Office. There is no evidence that the Form 872-T was actually received by the local Appeals Office. If the Facilities Management Branch delivered mail to the regional Appeals Office at 230 South Dearborn and it belonged to the local Appeals Office at 219 South Dearborn, the mail was delivered on a daily basis from the regional to the local Appeals Office. There is no evidence that the Form 872-T was actually received by the regional Appeals Office. It has never been the practice of the Facilities Management Branch, the Regional Director of Appeals, or the Chicago Appeals Office to discard any Form 872-T. In connection with the controversy over the assessment period, on April 13, 1987, Butler, petitioner's attorney at the time, [3] wrote to John Betz and stated that: In accordance with our telephone conversation today, enclosed is a photocopy of Form *102 872T with a certified receipt request, directed to the Chief, Appeals Office. As I indicated, I have no knowledge of this form or the mailing of same, and I am merely copying the documents as I received them from the father of the taxpayer.
Attached to the letter was a copy of the Form 872-T and a copy of the receipt stamped by the Facilities Management Branch mail room at 230 South Dearborn. John Betz first received a copy of the Form 872-T along with Attorney Butler's letter on April 15, 1987. The notice of deficiency for petitioner's 1980, 1981, and 1982 taxable years was mailed on August 1, 1989, which was more than 90 days after April 29, 1986, or April 15, 1987. OPINION 1980 Taxable Year
Section 6501(a) contains the general rule that "the amount of any tax imposed by this title shall be assessed *103 within 3 years after the return was filed". One exception to this general rule is set forth in section 6501(e)(1)(A), which permits a 6-year period of assessment "If a taxpayer omits from gross income an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return". Respondent argues that section 6501(e)(1)(A) applies to petitioner's 1980 taxable year because he did not include the proceeds of the sale of 41 acres of the California property on his 1980 Federal income tax return and the omitted proceeds exceed 25 percent of gross income reported on the return. [4] *104 Petitioner argues that the 6-year period of assessment does not apply because, under section 1034, [5] he was not required to report the sale. Petitioner maintains that he purchased a residence from his mother within the statutory time period, [6] and therefore he did not have to report the sale or recognize any gain on the sale in 1980. Both parties agree that petitioner sold the California property and that a portion of the property constituted petitioner's principal residence. The controversy herein focuses upon whether petitioner purchased a new principal residence within *105 2 years as required by section 1034 to qualify for nonrecognition of any gain. Respondent asserts that petitioner did not purchase the Park Forest property within the 2 years and, assuming he did, that the property was not his principal residence. Petitioner argues that he purchased the Park Forest property within the required timeframe and that he used the property as his principal residence. We conclude that the transfer of the Park Forest property to petitioner was without substance and not a bona fide sale. "'In the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding.'" Frank Lyon Co. v. United States, 435 U.S. 561, 573 (1978) (quoting Helvering v. Lazarus & Co., 308 U.S. 252, 255 (1939)). A transaction without substance has no significance beyond expected tax benefits, even though papers characterize the transaction differently. See Falsetti v. Commissioner, 85 T.C. 332, 347 (1985). The circumstances here reflect that the transaction between petitioner and his mother was *106 staged, without substance, and not at arm's length. [7] Petitioner purportedly purchased the property in 1981; however, the deed was not recorded until 1983. Petitioner did not start making regular payments to his mother until 1983, when he was informed that if he did not make payments the transaction could be considered a sham. Petitioner did give his parents money, which he labels as payments for the property, but these payments were sporadic and were not conclusively shown to be property payments. Petitioner's parents continuously resided in the Park Forest property throughout the time petitioner purports to have owned the property and while petitioner worked 200 miles away. Furthermore, the sales price was likely overstated to cover the sales price of petitioner's former residence. In this regard, the property was sold during 1990 by petitioner's father for $ 7,000 less than the purported $ 94,000 consideration stated in the documents for the alleged 1981 transaction. This is further evidence that the entire "sale" was fabricated solely to facilitate petitioner's attempt to defer the gain on the sale of the California property under section 1034. *107 It is most damning to petitioner that his mother transferred the property to a trust at the same time petitioner contends he owned the property. It was after she had executed the trust documents that petitioner purported to convey the property back to his mother. We find that the conveyance of the Park Forest property to petitioner was without substance and had no effect for tax purposes. Therefore, petitioner did not qualify for the nonrecognition provisions of section 1034 and, because he failed to report the proceeds of the sale of 41 acres of the California property on his 1980 Federal income tax return, section 6501(e)(1)(A) applies and the notice of deficiency was timely mailed within the 6-year special period of assessment. 1981 and 1982 Taxable Years
The Forms 872-A completed by petitioner for his 1981 and 1982 taxable years provided that the limitation period would be extended until "the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s)". (Emphasis added.) Petitioner argues that the period for assessment *108 expired because he filed a Form 872-T and a notice of deficiency was not issued within 90 days of receipt. Petitioner, relying on Freedman v. Commissioner, T.C. Memo. 1986-257, claims that the Form 872-T was received by the office considering his case on April 29, 1986. Respondent argues that the Form 872-T was not effective because petitioner mailed the form to the wrong address and the office considering petitioner's case never received the Form 872-T. We agree with respondent. Petitioner directed the Form 872-T to "Chief, Appeals Office" as directed by the instructions to the Form 872-T. Petitioner filled out the Form 872-T and mailed it without consulting with his attorney, even though he was being represented. There was no specific address on the instructions to the Form 872-T, so petitioner used an address listed in the Chicago telephone directory for the Internal Revenue Service, which was the address for the Chicago District Director's Office. However, the Chicago Appeals Office is not under the jurisdiction of the District Director's Office. In Freedman v. Commissioner, supra, the taxpayers' return *109 was being considered by the Manhattan District Director's Office located at 120 Church Street. The taxpayers delivered the Form 872-T to a District Director's Office located at 1501 Broadway. This Court stated that the term "office considering the case" appearing on the Form 872-A does not refer to the specific office building at which the return is actually being considered. Therefore, the taxpayers had sufficiently complied with the Commissioner's instructions and the Form 872-T was received by the office considering the case when the taxpayers delivered the form to a Manhattan District Director's Office. [8]
Freedman can be distinguished from this case because petitioner sent the form to a District Director's Office, but his return was not being considered by the District Director's Office. Even though petitioner directed the Form 872-T to the Chief, Appeals Office, petitioner *110 used the wrong address, and the form was received by the Facilities Management Branch mail room of the District Director's Office, which had no authority over petitioner's case. Although there is no evidence establishing what happened to the Form 872-T after the initial receipt by the Facilities Management Branch, the record reflects that the local Appeals Office did not receive it. Therefore, petitioner did not comply with the terms of the Form 872-A agreement because the Chicago Appeals Office, the office considering petitioner's case, did not receive the Form 872-T. Although the facts of this case may be viewed as favorable to petitioner, conceptually they are no different from a situation where a Form 872-T was sent in the name of the correct office but addressed to the opposite side of the country. This case is similar to other cases where the Form 872-T was found to be ineffective because it was sent to the wrong address. Petitioner sent the form to the Chicago District Director's Office instead of the Chicago Appeals Office, which is similar to cases where taxpayers sent the form to the Internal Revenue Service Center instead of the District Director's Office. See Batte v. Commissioner, T.C. Memo. 1989-319; *111 Valk v. Commissioner, T.C. Memo. 1984-622. Petitioner argues, in the alternative, that respondent received the Form 872-T on April 15, 1987, when Butler, petitioner's attorney, sent John Betz, the Appeals officer considering petitioner's case, a photocopy of the form executed by petitioner. Therefore, petitioner asserts that the notice of deficiency was not timely because it was not issued within 90 days after actual receipt. Respondent argues that the receipt of the photocopy was not sufficient to terminate the consent. Respondent maintains that Butler sent the letter to inform respondent that petitioner may have filed the Form 872-T in 1986 and that the period of assessment may have already terminated, but he did not send the photocopy for the purpose of terminating the consent. We agree with respondent. The purpose of a Form 872-T is to explicitly inform the Commissioner or taxpayers of the intent to terminate the Form 872-A. Grunwald v. Commissioner, 86 T.C. 85, 89 (1986). Butler's letter cannot be read as an effort by him, acting as petitioner's agent, to terminate the terms of the Form 872-A. Neither Butler *112 nor the Appeals officer had any knowledge that the form had been sent. Butler testified that he "could not represent that [he] had filed this document when indeed Barry Scherr had mailed the document to the Internal Revenue Service without [his] knowledge." We do not read the letter from Butler as intending to inform respondent of petitioner's intent to terminate the Form 872-A. To the contrary, we read Butler's letter as expressing ignorance of whether petitioner had such an intent. An analogous situation existed in Berenbeim v. Commissioner, T.C. Memo. 1992-272. In Berenbeim, taxpayer wife believed that tax returns had been filed, but they had not been. Taxpayer wife provided photocopies of the tax returns to the Commissioner's agent. The agent, without being asked to do so, caused the copies of the tax returns to be filed. Taxpayer wife did not intend to file the tax returns when she provided the copies to the Commissioner's agent, because she thought returns had already been filed. We held that we would not transmute taxpayer wife's original intent to file a joint return to the time when she supplied copies as evidence of filing. Berenbeim v. Commissioner, supra. *113 Likewise, in this case, we will not transfer petitioner's intent to file the Form 872-T to his attorney who was without knowledge of the original attempt and where the sole purpose was to subsequently provide copies. Therefore, the extension of the period for assessment had not been terminated and the notice of deficiency for petitioner's 1981 and 1982 taxable years was timely. An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The Regional Director of Appeals is an administrative office that oversees the local Appeals Offices for the midwest region and does not handle taxpayer cases directly. 1 Administration, Internal Revenue Manual (CCH), sec. 11(10)3, at 1109-5↩.
3. Butler represented petitioner starting on Feb. 18, 1985, and Butler represented petitioner in April 1987. At some point subsequent to April 1987, Butler ceased to represent petitioner in this matter.↩
4. Petitioner did not disclose the nature and amount of the sale proceeds omitted from his return. Therefore, the unreported proceeds constitute amounts omitted from gross income, and petitioner does not come within the protection of sec. 6501(e)(1)(A)(ii)↩.
5. Sec. 1034(a) provides, in pertinent part, that: If property * * * used by the taxpayer as his principal residence is sold by him and * * * property * * * is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price * * * of the old residence exceeds the taxpayer's cost of purchasing the new residence.↩
6. Sec. 1034(a)↩ was amended in 1981 to provide for a 2-year rollover period. The 2-year period is applicable if the rollover period expires on or after the effective date of the amendment, July 20, 1981. Prior to the amendment, the Code provided for an 18-month rollover period. Here, the expiration of the 18-month rollover period is subsequent to the effective date of the amendment. Therefore, the 2-year rollover period applies.
7. At trial it was evident that petitioner and his father were estranged. Petitioner's father testified against petitioner and presented evidence that the "sale" of the Park Forest property was set up for tax purposes. On some key points, petitioner's and his father's testimony were diametrically opposed. At one time, petitioner and his father had collaborated on many joint ventures, but had not spoken for several years prior to trial. During the trial the animosity between petitioner and his father was most evident. We found petitioner's father, however, to be a credible witness.↩
8. In Freedman v. Commissioner, T.C. Memo. 1986-257↩, this Court stressed the narrowness of its holding.